THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ANNERINO, Defendant-Appellant.

First District (4th Division)   No. 1—86—2015

Opinion filed May 4, 1989.

Ettinger & Pechter, Ltd., of Oak Lawn, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Anthony J. Carballo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant Michael Annerino was found guilty of intimidation and sentenced to two years in prison. Defendant appeals, contending that the State did not prove him guilty beyond a reasonable doubt, that he was denied a fair trial, that he had ineffective counsel, and that the court abused its discretion in sentencing him to two years in prison.

On November 21, 1985, the victim, Cheryl Logsdon, was visiting at the home of Phyllis and Linda Lane; the latter are sisters. The three women were in the kitchen while Logsdon was speaking on the telephone with her mother, Gertrude Richardson. A second call came in on the telephone which was equipped with a call waiting system. Logsdon took the call while placing her mother on "hold," and determined the caller to be defendant. Defendant asked to speak to Linda

Lane, who had been his girlfriend until the previous day, but Logsdon refused and switched the call back to her mother.

Logsdon had had defendant arrested on the previous day charging him with criminal sexual abuse. The police had advised her to call them if defendant attempted to contact her in the future.

Per Logsdon's testimony at trial, she informed her mother that defendant was on the other line and her mother told her to call the police. She then told Linda and Phyllis that she was going to call the police, but was unable to do so because defendant was still on the line. At this point defendant began to threaten her, stating that he would kill her if she went to court against him. Logsdon called the police immediately after hanging up the telephone and then told Phyllis and Linda what had occurred.

Several weeks after the incident, Linda ended her friendship with Logsdon, choosing to side with defendant. Phyllis continued to be friendly and supportive of Logsdon until she had a disagreement with her four months later while staying at the Logsdon home. At that time Phyllis ceased supporting Logsdon in her case against defendant.

Both Linda and Phyllis testified that they had lied to the police in November 1985. Linda stated that she had told the police that she did not know anything at the time, but in fact she had known that Phyllis and Logsdon had invented the story against defendant to get him into trouble. Phyllis testified that although she had told the police and the assistant State's Attorney that defendant had threatened the victim, she and the victim had actually invented the story.

During the trial, the victim and the deputy sheriff, who had been standing at her side during her testimony, testified in rebuttal that defendant threatened her while she was on the witness stand. Both stated that they saw defendant mouth the words, "I am going to kill you, mother [deleted]." The deputy also testified that the victim broke down as a result of defendant's in-court threat.

Defendant was asked during the trial whether he had said anything to the victim while she was testifying, and he denied it and stated that he had only told his lawyer that the victim was lying.

Defendant contends that the State did not prove him guilty beyond a reasonable doubt, alleging that the court substantially based its decision on the rebuttal testimony regarding defendant's in-court threat to the victim. However, the record does not uphold defendant's argument.

■ A defendant is guilty of intimidation when he threatens to inflict physical harm on another with the intent to cause the latter to perform or omit the performance of a certain act. Ill. Rev. Stat. 1985,

ch. 38, par. 12—6(a)(1).

▪ The credibility of the witnesses and the weight to be given their testimony is within the province of the trial court. (*People v. Wallace* (1980), 90 Ill. App. 3d 960, 964, 414 N.E.2d 99.) Unless the evidence is so improbable or unsatisfactory that it cannot uphold the court's decision, a reviewing court will not substitute its judgment for that of the court below even though the evidence is conflicting and irreconcilable. 90 Ill. App. 3d at 964-65.

▪ Here, the victim testified that during a telephone conversation, defendant threatened to kill her if she appeared in court against him. Her account of the incident remained consistent from the time of her initial statement to police through her testimony at trial. Her statements were corroborated by her mother's account of the incident and also by the testimony of defendant who, although denying the making of a threat, admitted to some portion of the telephone conversation.

The testimony of Linda and Phyllis Lane was clouded by their recanting of the statements they had made originally to the police and the assistant State's Attorney. Both changed their versions of the incident after each separately ended her respective friendship with the victim. It was not unreasonable for the court to determine that their testimony lacked credibility. We find that the State proved defendant guilty beyond a reasonable doubt.

Defendant next urges that he was denied a fair trial where the trial court admitted the rebuttal testimony of the victim and the deputy sheriff regarding defendant's in-court threat to the victim. Defendant contends that the testimony was prejudicial, of no probative value and was in violation of the exclusionary rule prohibiting evidence of other crimes.

At trial defendant denied that he had ever threatened the victim. He further denied that he had threatened her in court during the trial. The State elicited rebuttal testimony that contradicted defendant's statements.

▪ In Illinois rebuttal evidence may be introduced to explain, repel, contradict or disprove evidence produced by the defendant as to a material issue, but not as to a collateral issue. (*People v. Miller* (1981), 101 Ill. App. 3d 1029, 1037, 428 N.E.2d 1029; *People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.) The trial court determines the admissibility of rebuttal evidence and an appellate court will review the trial court's determination only in cases of clear abuse. 96 Ill. App. 3d 958.

▪ In *People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d

821, the court summarized the law regarding the admission of evidence of other crimes as follows:

"Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crime. [Citation.] Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive or absence of mistake. [Citations.] In fact, this court has held that evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime."

In *People v. Bartall* (1983), 98 Ill. 2d 294, 310, 456 N.E.2d 59, the court stated that "[e]vidence of another crime, however, may be used only when the other crime has some threshold similarity to the crime charged. It is this similarity which increases the relevance of the evidence and ensures that it is not being used solely to establish the defendant's crime propensities."

■ Here, the subsequent crime committed by defendant had more than just a threshold similarity to the crime charged. It was exactly the same crime, that of threatening to kill the victim if she testified. Such a similarity in crimes may be used to establish the necessary criminal intent of the defendant and the original offense charged. *People v. McKibbins* (1983), 96 Ill. 2d 176, 187, 449 N.E.2d 821.

We do not find that the court abused its discretion in allowing the rebuttal testimony. Although the testimony presented evidence of a crime committed subsequent to the crime being tried, it clearly established defendant's intent to intimidate the victim.

Defendant next maintains that his conviction must be reversed because counsel's trial performance was deficient. Reviewing the record we find defendant's contention to be without merit. During cross-examination defendant was asked if he had said anything to the victim while she was testifying and defendant responded that he had not, but that he had turned to his lawyer and said that the victim was lying. After the cross-examination and prior to the State presenting rebuttal testimony, Gary Stanton, attorney for defendant, advised the court that he would be testifying on behalf of his client with respect to statements made in court during the victim's testimony. The court relieved attorney Stanton from duty on the case so that he could testify. However, at the end of the State's rebuttal, cocounsel for defendant did not call attorney Stanton as a witness, and Stanton resumed his duties as defense counsel. Defendant contends that his cocounsel's failure to call Stanton as a witness prejudiced his defense.

■ The standard for determining the validity of an ineffective as-

sistance claim is whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Defendant must prove both that his attorney's performance fell below an objective standard of reasonableness and that this performance resulted in prejudice which adversely affected his case.

■ Here, defendant was found guilty beyond a reasonable doubt on evidence that did not include the rebuttal testimony, and it is highly improbable that attorney Stanton's testimony would have gone to the heart of the case in chief. Yet, even if the rebuttal testimony did play a part in influencing the court's decision, it is doubtful that Stanton could have significantly detracted from the testimony of the impartial deputy sheriff who had been facing the defendant as he mouthed, not spoke, the threat to victim. We find that counsel's decision not to call attorney Stanton was simply a matter of trial strategy and does not support his claim of ineffective counsel. See *People v. Wright* (1986 ), 111 Ill. 2d 18, 488 N.E.2d 973.

■ Defendant contends that the trial court abused its discretion by sentencing him to two years' imprisonment. In Illinois a trial court's decision regarding the sentencing of a defendant is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A sentence must be based on the particular circumstance of each individual case and depends on many factors, including defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. (See 68 Ill. 2d at 153.) Here, the record indicates that prior to sentencing the court clearly considered all of the necessary factors. We do not find that there was an abuse of discretion.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.