THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL DIAZ *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—86—1690, 1—86—1692, 1—86—1848, 1—87—0495 cons.

Opinion filed September 28, 1989.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant Eddie Rodriguez.

Paul P. Biebel, Jr., Public Defender, of Chicago (Paul D. Bellendir and Richard E. Cunningham, Assistant Public Defenders, of counsel), for appellants Paul Diaz and Anthony Allcala.

Randolph N. Stone, Public Defender, of Chicago (Paul D. Bellendir, Assistant Public Defender, of counsel), for appellant Anthony Virgilio.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Andrea K. Muchin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:
After a bench trial, defendants Paul Diaz, Anthony Allcala, Eddie Rodriguez, and Anthony Virgilio were found guilty of multiple counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, pars. 12—4(a), (b)(1), (b)(8)). Defendants were each sentenced to serve an extended term of 10 years in the Illinois Department of Corrections. Defendants Diaz and Allcala appeal, seeking reversal of their convictions and remandment of their causes for a new trial or, in the alternative, vacation of their sentences and remandment of their causes for resentencing. Defendants Rodriguez and Virgilio appeal, seeking vacation of two of their convictions for aggravated battery and reversal and remandment of this cause for a new sentencing hearing or, in the alternative, for reduction of their sentences to nonextended terms, not to exceed five years.
Rodriguez raises the following issues for review: (1) whether the trial court improperly relied on the infliction of great bodily harm as

an aggravating factor in imposing his 10-year extended-term sentence; (2) whether the trial court properly considered him as an individual in determining the appropriate sentence; and (3) whether the trial court erred in entering judgment and imposing sentence on three counts of aggravated battery.

Diaz and Allcala raise the following issues for our review: (1) whether they were denied their constitutional right to be personally present during all stages of their trial, and (2) whether they were denied a fair sentencing hearing.

Virgilio raises substantially the same issues as his codefendants. Specifically, he joins Rodriguez in his questioning of the trial court's reliance on the infliction of great bodily harm in imposing his 10-year sentence and in the imposition of three counts of aggravated battery. He joins Diaz and Allcala in questioning the fairness of the sentencing hearing.

We affirm.

At trial, the evidence established that between 6:15 and 6:40 a.m. on September 2, 1984, Marion Glazebrook and his wife, Judy Glazebrook, heard noises coming from the front of their neighbor's house. Upon investigation, the Glazebrooks noticed that their neighbor, Alfredo Martinez, was engaged in a dispute with several individuals. Mrs. Glazebrook began taking pictures of the people involved while Mr. Glazebrook got dressed to assist his neighbor.

Once outside, Mr. Glazebrook began taking pictures. He noticed that there were more people down the street from his house. As he walked toward the area in which these people were gathered, he continued to take pictures. A group of approximately 20 people then began to approach him, making gestures with their hands and speaking Spanish. One of the members of this group called him a punk in Spanish. Two of the individuals picked up 2- by 4-inch boards of wood. At some point in time, Glazebrook told his wife to call the police.

Five individuals then surrounded Glazebrook. Rodriguez allegedly swung his radio at Glazebrook. Subsequently Glazebrook was felled by someone swinging one 2- by 4-inch board. The group then began to beat him with rocks and boards. Glazebrook was able to take refuge under a nearby car. When Mrs. Glazebrook saw that this group of individuals was beating someone on the ground, she ran toward them. The group dispersed as Mrs. Glazebrook approached. Mr. Glazebrook was then taken to the hospital by ambulance for treatment of the injuries he sustained.

On September 4, 1984, Mr. Glazebrook, while in the hospital, identified the various defendants from photograph books brought by the

police. Mrs. Glazebrook and Alfredo Martinez picked out Robert Walker (not a party to this appeal), Rodriguez, Diaz, Allcala, and Virgilio from photograph books at the police station.

The defendants herein were subsequently arrested. Pictures of the scene and the 2- by 4-inch boards were offered into evidence. Defendants were charged with attempted murder, armed violence, aggravated battery, and residential burglary.

At trial, Walker testified that he was not at the scene; he was baby-sitting at his girl friend's house. He was acquitted of all charges. Defendants Rodriguez, Diaz, Allcala, and Virgilio were each found guilty of three counts of aggravated battery.

On June 16, 1986, a sentencing hearing was conducted where counsel for the various parties argued aggravating and mitigating factors. After hearing counsel's arguments, each defendant was sentenced to an extended term of 10 years. Defendants now appeal the court's decision.

The first issue Rodriguez and Virgilio present for review is whether the trial court erred in imposing their 10-year extended-term sentences. They contend that the trial court improperly relied on the infliction of great bodily harm as a factor in imposing the extended-term sentence.

A trial court's decision in the sentencing of a defendant is entitled to great weight and deference. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93.) Absent an abuse of discretion, the trial court's decision will not be disturbed. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) A court of review will not substitute its judgment for that of the trial court merely because it would have imposed a different sentence. *Perruquet*, 68 Ill. 2d at 156.

The State initially maintains that the issue as to the excessiveness of the extended-term sentences was waived since it was not raised at sentencing. Where a defendant fails to object to deficiencies in sentencing proceedings and fails to raise the same issues in his post-trial motion, defendant has waived such issues on appeal. (*People v. Howard* (1984), 121 Ill. App. 3d 938, 953.) Even assuming, *arguendo*, that this issue was not waived, we do not find that the trial court abused its discretion in imposing the extended-term sentences.

The trial court in imposing the extended terms stated:

"Although the court is certain that the evidence is replete in the guilt of each defendant, either directly or by accountability * * *, the court has examined the statute with reference to [an] extended term, that statute being Chapter 38, Section 1005—8—2 which requires[,] before an extended term can be im-

posed[,] that the court look at and examine and find one or more of the aggravating factors set forth in Chapter 38, Section 1005—5—3.2 as being in existence before there can be the imposition of any extended term.

The court will impose an extended term in this case, and the basis upon which the court will impose the extended term is that the conduct of all of these defendants[,] along with their henchmen who are not present in this courtroom and who were not arrested and charged[,] caused great and serious harm, serious bodily harm to Turk Glazebrook, serious emotional harm to all of the citizens of the community ***.

Not only that but each of these defendants has a history of prior criminal activity. That is replete in the report of the Adult Probation Department concerning their criminal history and background."

Defendants argue that the court solely relied on the aggravating factor of serious bodily harm as a basis for the extended terms. We disagree that this was the sole basis for the court's sentencing decision. Further, we are not persuaded that it was error for the court to consider serious bodily harm as a factor. See *People v. Thomas* (1988), 163 Ill. App. 3d 670, 682.

The statute sets forth the factors that may be considered in imposing an extended term:

"(b) [T]he following factors may be considered by the court as reasons to impose an extended term sentence *** upon any offender ***:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty ***."
Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(1), (2).

■ Although certain statutory factors are to be considered in determining whether an extended sentence should be imposed, it is not incorrect to also consider nonstatutory factors in aggravation when imposing an extended-term sentence. (*People v. Thomas* (1988), 168 Ill. App. 3d 113, 119.) It is not necessary for the trial court to articulate or assign a value to each fact upon which it relies in determining a sentence. (*People v. Lucien* (1982), 109 Ill. App. 3d 412, 420.) Since

the factors to be considered in imposing an extended term (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)) are set forth in the disjunctive, the finding of any one of these factors would be sufficient as a basis for an extended-term sentence. *Thomas*, 168 Ill. App. 3d at 118.

■ The trial court in the instant case found that an extended term was warranted due to the infliction of serious bodily harm and the fact that both Rodriguez and Virgilio had previously been convicted of numerous felonies in the same or greater class. These previous convictions alone constitute a sufficient basis for the extended terms under the statute. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1).) We find, therefore, that the trial court did not err in imposing the extended-term sentences.

Rodriguez next contends that the trial court erred in refusing to treat him as an individual in determining his sentence in violation of the Illinois Constitution and the Illinois Criminal Code of 1961. (Ill. Const. 1970, art. I, §11; Ill. Rev. Stat. 1985, ch. 38, par. 1—2(c).) Defendant specifically refers to the following statement made by the court:

"Normally the court would attempt to apportion blame here in arriving at sentencing, but the evidence in this case makes it impossible to really apportion the blame that each defendant in this case bears."

Section 11 of the Illinois Constitution provides:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.)

Section 1—2(c) of the Criminal Code provides that the purpose of the Code is to "[p]rescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders." Ill. Rev. Stat. 1985, ch. 38, par. 1—2(c).

Absent an abuse of discretion the trial court's decision will not be disturbed. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) A trial court may consider the disparity question in sentencing to fulfill one of the fundamental fairness mandates that those who are similarly situated do not receive grossly disparate sentences. However, an abuse of discretion will not be found where the situations of defendant and his codefendants are sufficiently similar to warrant the same sentence. *People v. Gonzalez* (1979), 78 Ill. App. 3d 1146, 1149.

■ We do not find that the trial court abused its discretion where defendant (1) initiated the assault on Glazebrook by swinging his radio at him; (2) was a member of the group that battered Glazebrook; and

(3) had a prior criminal history that included four felony convictions, three parole violations, and two probation violations. The trial court correctly found the evidence was sufficient to support defendant's sentence either directly or under an accountability theory.

Finally, Rodriguez and Virgilio contend that the trial court erred in entering judgment and imposing sentence on three counts of aggravated battery rather than one count of aggravated battery, causing serious bodily harm, and that their sentences should be vacated and remanded for resentencing. The State confesses error in the imposition of two of the three counts. The remedy, as Rodriguez acknowledges, is to vacate the surplus convictions. (See *People v. Williams* (1987), 161 Ill. App. 3d 613, 622.) Remandment is not necessary where there is no indication that the trial court was improperly influenced by the surplus counts. *Williams*, 161 Ill. App. 3d at 622.

Although all of the orders of sentence and commitment reflect three counts of aggravated battery, we find no evidence that the trial court even considered, in sentencing, more than one count of aggravated battery. We, therefore, order that the orders of sentence and commitment be modified so as to reflect vacation of the two surplus counts.

Now we will address the two issues raised by defendants Diaz and Allcala. Virgilio joins Diaz and Allcala in presenting the second issue to the court for review. First, defendants contend that they were denied their constitutional right to be present at all stages of their trial when the proceedings were continued after a lunch break despite the fact that neither defendant was present. During their absence Mrs. Glazebrook was cross-examined by codefendants' counsel. The State maintains that defendants' rights were waived by their failure to object at trial and at their post-trial hearing. The State further argues, in the alternative, that if their right to be present was not waived, substantial rights were not involved and, therefore, their right to be present was not violated.

The following testimony was given by Mrs. Glazebrook while defendants Diaz and Allcala were absent:

"MR. KARLIN [counsel for Walker]: Miss [*sic*] GLAZEBROOK, did I understand you to say that as soon as you started back, the group started dissipating or started running away just briefly, is that correct?

MRS. GLAZEBROOK: Right.

MR. KARLIN: And at that time, you found a person under the car and you didn't see your husband or didn't recognize him as your husband, but when you came up, the person was

under the car, is that correct?

MR. GAMBONEY [Assistant State's Attorney]: I'll object to the form of the question.

THE COURT: Overruled. If she understands it. Do you understand the question, Mrs. Glazebrook?

MRS. GLAZEBROOK: Yes, but the sequence, I'm a little confused at your sequence.

MR. KARLIN: When you came out of the house the second time and did not see your husband, you saw someone being surrounded, is that correct?

MRS. GLAZEBROOK: That's correct.

MR. KARLIN: And at the same time you saw some of those persons who were surrounding, start to take off, is that correct?

MRS. GLAZEBROOK: Yes.

MR. KARLIN: By the time you got down there, every one of those others had taken off?

MRS. GLAZEBROOK: Yes.

THE COURT: Tell him to bring out Allcala and Diaz.

MR. KARLIN: And how far from—you then walked all the way down to the car, is that correct?

MRS. GLAZEBROOK: Walked all the way down?

MR. KARLIN: You walked all the way down to the car, did you? Yes or no.

MRS. GLAZEBROOK: Can I insert? I had—

MR. KARLIN: Did you walk?

MRS. GLAZEBROOK: I had been past the car. Do you understand what—

MR. KARLIN: No, I don't.

MRS. GLAZEBROOK: I had chased them and I was past where my husband was.

MR. KARLIN: You left the person under the car?

MRS. GLAZEBROOK: I didn't know there was somebody under the car.

MR. KARLIN: It wasn't until you passed you saw somebody under the car?

MRS. GLAZEBROOK: I heard moans.

MR. KARLIN: You didn't see anyone. You went past them?

MRS. GLAZEBROOK: Yes.

MR. KARLIN: How close did you come to anyone?

MRS. GLAZEBROOK: How close did I come to anyone? Probably sixty feet.

THE COURT: Let the record indicate Mr. Allcala and Mr. Diaz have been returned to the Court room, Miss Lamping having arrived. Proceed."

■ The right to be present at trial, like many other constitutional rights, may be waived by defendant's voluntarily or involuntarily absenting himself from trial. (*People v. Allen* (1967), 37 Ill. 2d 167, 171.) Defendants contend that the right to be present at trial is governed by a *per se* rule. We find no authority, nor do defendants cite to any authority, that would support their contention that the right to be present is governed by a *per se* rule. While we are not convinced that defendants waived their right to be present at trial, we find that no prejudicial error was committed that would warrant reversal. (See *People v. Lawson* (1977), 52 Ill. App. 3d 343, 353-54.)

> " 'The purpose in reviewing a criminal case is to determine whether a just verdict has been rendered, upon sufficient competent evidence, after a trial in which no error prejudicial to defendant's rights has occurred rather than a determination of whether the record is error free. [Citation.] Where it appears that the errors in the record could not have reasonably affected the result, the errors are harmless and the judgment of conviction should be affirmed. [Citation].' " (*People v. Lawson* (1977), 52 Ill. App. 3d 343, 354, quoting *People v. Castillo* (1976), 40 Ill. App. 3d 413, 420.)

Although it is ordinarily error to conduct a trial in defendant's absence, in this case, however, defendants were absent for a short period of time and the substance of the testimony did not involve defendants or affect their substantial rights. We find that the error, if any, did not affect the outcome of the case.

Finally, defendants Diaz, Allcala, and Virgilio argue that they were denied a fair sentencing hearing because (1) the trial judge improperly considered the culpability of others who were not present in court and societal harm in general in determining their sentences, and (2) it was improper for the court to consider the victim impact statement. As previously stated in this opinion, we do not find an abuse of discretion where defendants in this case received the same sentences. The defendants were considered individually although receiving the same sentences.

■ Aggravated battery is a Class 2 felony with a sentencing range of not less than three years and not more than seven years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5).) An extended term may be imposed when a defendant has previously been convicted of any felony, in the same or greater class, within 10 years or the offense

was accompanied by brutal or heinous behavior. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(1), (2).) Each of the defendants had been convicted of at least one felony in the same or greater class within 10 years of this incident. We, therefore, find that defendants' previous convictions were sufficient under the statute to warrant the extended-term sentence. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1).) Further, the attack on Glazebrook was arguably indicative of the kind of wanton behavior prohibited by the statute. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).

The affect of such an offense on society may be considered but is not sufficient justification, without consideration of the other factors, to impose sentence. (*People v. Hall* (1987), 159 Ill. App. 3d 1021, 1034-35.) In this case, the trial court also considered both aggravating and mitigating factors concerning each defendant prior to imposing sentence. We do not find that the trial court erred in considering the effect of this offense or its affect on society in conjunction with the other pertinent factors in sentencing defendants.

■ We also find no merit in defendants' argument that the trial court improperly considered the victim impact statement in sentencing them. As we recently decided in *People v. Scott* (1989), 180 Ill. App. 3d 418, 424, a trial court may consider evidence of victim impact at the sentencing hearing in a non-capital case. The case that defendants primarily rely upon for the proposition that victim impact statements may not be considered in sentencing, *Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529, may be distinguished from the instant case, because the offense involved in *Booth* was a capital offense. Victim impact statements may, however, be considered in noncapital cases. *Scott*, 180 Ill. App. 3d at 424.

For the foregoing reasons, the decision of the circuit court is affirmed, and the sentence and commitment orders are hereby modified to reflect vacation of the surplus counts. As part of our judgment, we grant the State's request that defendants be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed as modified.

JIGANTI, P.J., and LINN, J., concur.